UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

MELISSA FONSECA, )
)
    *Plaintiff,* )
)
v. ) Case No. 4:09-cv-93
)
GOLDEN LIVING CENTER - ) Judge Mattice
MOUNTAINVIEW, )
)
    *Defendant.* )

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Golden Living Center-Mountainview's[1] Motion to Dismiss [Court Doc. 5]. Defendant seeks dismissal of several of the claims that Plaintiff Melissa Fonseca asserted in her Complaint [Court Doc.1-1]. Plaintiff has since filed a Motion to Stay Discovery [Court Doc. 31], requesting that the Court stay discovery in this action pending the resolution of Defendant's Motion.

For the reasons set forth below, Defendant's Motion to Dismiss [Court Doc. 5] will be **GRANTED** and Plaintiff's Motion to Stay Discovery [Court Doc. 31] will be **DENIED AS MOOT**.

**I.    FACTS AND PROCEDURAL POSTURE**

Plaintiff Melissa Fonseca filed her Complaint in the Circuit Court of Franklin County, Tennessee on August 17, 2009. (Court Doc. 1-1, Compl.) In the Complaint, Plaintiff alleges that she was subjected to various forms of gender discrimination while she was employed with Defendant. (Compl. ¶¶ 6-10.) In addition, Plaintiff contends that Defendant

---

[1] The Court notes that Defendant stated in its pleadings that it has been incorrectly identified as Golden Living Center - Mountainview. The correct name for Defendant is GGNSC Winchester LLC d/b/a Golden Living Center - Mountain View.

wrongfully terminated Plaintiff from her position based on her age and gender, in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq*. (*Id.* ¶¶ 13-15.) Plaintiff asserts nine separate counts in her Complaint: negligence per se, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, gender discrimination, age discrimination, hostile work environment, wrongful termination, and punitive damages. (*Id.* ¶¶ 21-66.)

On September 21, 2009, Defendant removed the action to this Court. (Court Doc. 1-2, Notice of Removal.) Defendant filed both an Answer to the Complaint and a Motion to Dismiss on October 12, 2009. (Court Docs. 4 & 5.) Defendant asserts that it is entitled to dismissal of seven of Plaintiff's nine claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense arises in the context of a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on the holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court clarified this statement by outlining the two "working principles" governing a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *Id.* Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail but whether there is "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Although Defendant generally asserts it is entitled to dismissal of several claims pursuant to Fed. R. Civ. P. 12(b)(6), Defendant presents different arguments in support of dismissal for each count in Plaintiff's Complaint. Accordingly, the Court will address each count separately.

### A. Count I - Negligence Per Se

Defendant asserts that Plaintiff's negligence per se claim is invalid and fails to state

a claim under Fed. R. Civ. P. 12(b)(6) because the negligence per se doctrine does not apply to violations of the THRA. (Court Doc. 6, Def.'s Mem. in Supp. of Mot. to Dismiss at 2.) Defendant claims that the applicability of negligence per se is generally confined to statutes that involve public safety or health, and the doctrine is meant to dictate a statutory standard of care for individual conduct. (*Id.*) Therefore, the negligence per se doctrine is not intended to apply to a statute such as the THRA. (*Id.*)

Plaintiff contends that no Tennessee court has explicitly restricted the use of negligence per se to safety statutes, and Plaintiff has alleged sufficient facts to satisfy the negligence per se requirements. (Court Doc. 17, Pl.'s Resp. at 2-4.)

Generally, negligence per se is defined as "[n]egligence established as a matter of law, so that breach of the duty is not a jury question." Black's Law Dictionary 1063 (8th ed. 2004). Negligence per se is meant to "prove" the duty and breach of duty elements of a general negligence claim by referencing a statute setting forth a standard of care that was clearly violated. The plaintiff alleging negligence per se still has to prove causation and damages to succeed with the overall claim. *See Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003).

In order to apply the negligence per se doctrine to Tennessee statutes, there are two initial inquiries. First, the plaintiff must belong to the group of persons the statute was created to protect. *Id.* at 591. Second, the plaintiff's injury must be the type of injury that the statute was designed to prevent. *Id.* Tennessee courts have stated, however, that the negligence per se doctrine "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute. . . . Not every

statutory violation amounts to negligence per se." *Id.* at 590 (citations omitted). Instead, to invoke this doctrine, the statute "must establish a specific standard of conduct." *Id.* (citations omitted). The *Rains* court also pointed out that the negligence per se doctrine "does not create a new cause of action. . . . Rather, it is a form of ordinary negligence that enables the courts to use a . . . statute to define a reasonably prudent person's standard of care." *Id.* at 589 (citations omitted).

Plaintiff appears to be proceeding with her gender discrimination claims pursuant to the portion of the Tennessee Human Rights Act codified in Tennessee Code Annotated § 4-21-401, which states:

> (a) It is a discriminatory practice for an employer to:
>
> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin.

Tenn. Code Ann. § 4-21-401(a)(1). The statute's definition of "employer" also includes agents of the employer, so this statute would encompass any discriminatory practices or conduct towards Plaintiff by other employees of Defendant. *See* Tenn. Code Ann. § 4-21-102(5). Because the statute was intended to protect individuals from discrimination based on gender, Plaintiff is within the class of persons this statute was created to protect. Furthermore, the injury that Plaintiff suffered–discharge from employment–is the type of injury the statute was meant to prevent. Plaintiff has therefore satisfied the two threshold inquiries required prior to application of the negligence per se doctrine.

The Court fails to see, however, how this statute establishes a specific standard of care for employers or individuals. Tennessee courts have generally applied negligence per

se to statutes concerning public safety, or ordinances that mandate certain building requirements for safety purposes. *See McCracken v. City of Millington*, No. 02A01-9707-CV-00165, 1999 WL 142391 (Tenn. Ct. App. Mar. 17, 1999) (holding that violation of the statutory maximum speed limit constituted negligence per se)*; Smith v. Owen*, 841 S.W.2d 828 (Tenn. Ct. App. 1992) (holding that negligence per se could apply to violation of minimum standards set forth in housing code); *Adams v. Brown*, 262 S.W.2d 79 (Tenn. Ct. App. 1953) (holding that violation of statute prohibiting passing at intersections was negligence per se); *Kingsul Theatres v. Quillen*, 196 S.W.2d 316, 318 (Tenn. Ct. App. 1946) (stating that "[t]he violation of a municipal regulation or ordinance designed to provide for the safety of buildings and premises constitutes negligence per se.").

The statutes in these cases contained clearly defined standards of care, and violations of those standards of care can generally be easily ascertained. The Court can contemplate similar hypothetical situations where the application of negligence per se would be appropriate. When a statute or ordinance specifies that a stairway must have railings rising at least 35 inches from each step, and a stairway is constructed with a railing that rises only 30 inches from each step, there is an obvious and easily determined violation of that statute or ordinance. Likewise, when a statute mandates that vehicles stop at stop signs, and a vehicle does not stop at the sign, it is clear that the statute has been violated and that the individual who failed to stop breached that statutory standard of care. Although there may be some limited fact finding or discovery required to conclusively determine a violation, these scenarios set forth a threshold for minimum standards of conduct, and it is relatively simple to establish conduct that falls below that minimum.

In regards to the application of negligence per se, the Tennessee Court of Appeals

has stated:

> [I]t is not sufficient for a plaintiff to assume, as these plaintiffs have, that the alleged violation of a statute automatically supports a claim of negligence per se. Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence per se claim cannot stand unless the statute establishes a standard of care.

*King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000) (holding that statutes setting forth administrative requirements could not be used to support a negligence per se claim). The THRA, however, does not establish a minimum standard of conduct. It prohibits discrimination based on various factors, but the language does not mandate a standard of care for employers or individuals, nor is a violation of this statute easily defined or proven. In fact, the Court cannot conceive of a situation in which a violation of the THRA would be conclusively determined as a matter of law. Instead, such a violation would no doubt be based on the presentation of extensive facts and, in the event a genuine issue of material fact is presented, the jury as fact-finder would determine if an employer or employer's agent breached the statute through certain conduct. Although the Court acknowledges that no extant Tennessee case has held that negligence per se does not apply to violations of the THRA, the Court is not, as Plaintiff suggests, restricted from dismissing such a claim after a reasonable interpretation of Tennessee state law. The Court finds that the THRA fails to invoke the negligence per se doctrine in one crucial respect–the statute lacks a standard of care or minimum threshold of conduct that would make application of this doctrine appropriate.

The Court finds, therefore, that the negligence per se doctrine does not apply to the THRA and that Plaintiff's negligence per se claim is not viable in this context. Accordingly,

Defendant's Motion to Dismiss Plaintiff's negligence per se claim is **GRANTED** and Count I is **DISMISSED WITH PREJUDICE**.

> **B.** **Counts II and IV - Negligence and Negligent Infliction of Emotional Distress**

Defendant contends that Plaintiff's counts of negligence and negligent infliction of emotional distress are barred by the exclusivity of the remedy available through the Tennessee Workers' Compensation Act ("TWCA") and must be dismissed. (Def.'s Mem. at 6.) Defendant asserts that Plaintiff cannot recover separate tort damages for injuries that occurred during work unless the employer acted intentionally; therefore, because Plaintiff alleges that Defendant acted negligently to support these counts, Plaintiff's sole remedy is through the TWCA. (*Id.* at 6-7.)

Plaintiff claims that the injuries she suffered as a result of Defendant's negligence and negligent infliction of emotional distress did not arise out of or occur in the course of her employment and therefore cannot be covered by the TWCA. (Pl.'s Resp. at 8.) Instead, Plaintiff contends that these injuries arose upon the termination of her employment with Defendant and are viable tort claims. (*Id.*)

Plaintiff appears to be making the argument that she cannot proceed with a workers' compensation claim on these injuries; therefore, the claims should not be barred by the existence of an exclusive remedy that is not available to her. As a preliminary matter, "[a]n employee's right to recover under the Tennessee Workers' Compensation Act is based upon a finding that the employee's personal injury arose out of and in the course of employment." *McCurry v. Container Corp. of Am.*, 982 S.W.2d 841, 843 (Tenn. 1998) (citing Tenn. Code Ann. § 50-6-103(a)). Because Plaintiff has sued only Defendant

employer in this action, the Court assumes that the negligence claims against Defendant are based upon theories of negligent hiring, negligent supervision, and negligent retention of other employees.

Plaintiff's contention that her injuries are not covered by workers' compensation because they did not arise out of employment or occur during the course of her employment, but rather arose upon termination, is wholly unpersuasive. If Defendant is guilty of negligent hiring, negligent supervision, or negligent retention of other employees, the injuries must have started and accrued during Plaintiff's employment and did not suddenly arise at the moment of termination. Plaintiff must have been performing the duties of her employment and was at the work place at the time of the events that gave rise to these claims, so it cannot be said that her injuries did not occur in the course of her employment. As for the requirement that these injuries arise out of employment, the general standard is that the injuries must have a "rational connection" to Plaintiff's work duties. *Id.* Defendant's negligent hiring, negligent supervision, or negligent retention that results in injury or damage to Plaintiff would have to be rationally connected to her duties as an employee of Defendant. After all, without this employment relationship, Plaintiff's employment and work duties would not exist, nor would her alleged injury. Plaintiff's very employment with Defendant is the overall source of Plaintiff's injuries; therefore, they are rationally connected to her work duties and arose out of her employment.

Generally, "workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." *Valencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citation omitted). The Tennessee

Supreme Court has held that the only exception to this exclusive remedy is an intentional act by the employer. *Id.* at 242-43 (citations omitted).

Tennessee courts have also held that workers' compensation covers emotional injuries, including those which result from non-physical trauma. *See Anderson v. Save-a-Lot, Ltd.*, 989 S.W.2d 277, 280 (Tenn. 1999) (stating that it is "well-settled than an employee may recover workers' compensation benefits for emotional injuries . . . arising out of employment" under certain circumstances); *Guess v. Sharp Mfg. Co. of Am., a Div. of Sharp Elecs. Corp.*, 114 S.W.3d 480, 484-85 (Tenn. 2003) (holding that workers' compensation covered emotional injuries resulting from non-physical trauma); *see also Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 319 (Tenn. 2005).

None of the above-referenced cases have explicitly stated that negligence claims, including negligent infliction of emotional distress claims, are included in the exclusive remedy of the TWCA, rendering them unavailable as separate tort claims. The Tennessee Court of Appeals, however, did so rule in *Bellomy v. Autozone, Inc.*, No. E2009-00351-COA-R3-CV, 2009 WL 4059158 (Tenn. Ct. App. Nov. 24, 2009). In *Bellomy*, the plaintiff asserted claims of negligent infliction of emotional distress and negligent retention. *Id.* at *1. The trial court held that the plaintiff's negligence claims would be barred by Tennessee Code Annotated § 50-6-108, which makes a workers' compensation award the sole remedy for any work-related injury or death. *Id.* at *6. The Tennessee Court of Appeals affirmed this conclusion, stating that the plaintiff's negligence claims did not satisfy the requirement of the exclusion–that the employer have "actual intent" to injure the employee–and therefore must be barred by the exclusive TWCA remedy. *Id.* at *11.

The Court finds that Plaintiff's claims against her employer, grounded in negligence, are entirely covered by the exclusive remedy available through workers' compensation and cannot be asserted as separate tort claims. These counts are titled negligence and negligent infliction of emotional distress, and there is no indication in Plaintiff's Complaint that Defendant employer took any action intentionally to cause her injuries. Any negligent action by Defendant which caused injury to Plaintiff, even emotional injury, must be addressed through the exclusive remedy provided in the TWCA. Plaintiff's tort claims for negligence and negligent infliction of emotional distress are therefore barred.

Accordingly, Defendant's Motion to Dismiss Counts II and IV of Plaintiff's Complaint is **GRANTED** and these counts are **DISMISSED WITH PREJUDICE**.

### C. Count III - Intentional Infliction of Emotional Distress

Defendant asserts that Plaintiff did not plead sufficient facts to support a claim for intentional infliction of emotional distress. (Def.'s Mem. at 4-6.) Instead of pleading specific facts about conduct that resulted in this alleged injury, Plaintiff merely makes general, conclusory statements that Defendant and its employees behaved in such a way as to cause her severe emotional distress. (*Id.*) Plaintiff contends that she has stated sufficient facts to survive a Motion to Dismiss; she claims that she could not logically lay out the entire basis for her claim in the Complaint, but rather must conduct discovery based on these allegations. (Pl.'s Resp. at 5-6.) Plaintiff states that she should be given the opportunity to prove her claim because she pled the elements of the tort and it is plausible. (*Id.* at 7.)

The following appears in the Complaint to support this claim:

> 29. Plaintiff adopts and incorporates, by reference, all of the proceeding paragraphs as if fully set forth hereunder.
> 30. DEFENDANT and their agents and/or employees, by extreme and outrageous conduct, intentionally and/or recklessly caused severe emotional distress to Plaintiff.
> 31. DEFENDANT'S conduct and that of their agents and/or employees offended the generally accepted standards of decency and morality.
> 32. DEFENDANT'S conduct and that of their agents and/or employees conduct is causally connected to Plaintiffs' emotional distress.

(Compl. ¶¶ 29-32.) The only information in the preceding paragraphs that might support Plaintiff's claim are general statements that Plaintiff experienced "unwarranted comments and abusive conduct by her supervisors" based on her gender that "constituted harassment and were severe to the extent that they altered the terms and conditions of Plaintiff's working environment." (*Id.* ¶¶ 9-11.) Plaintiff further alleges that Defendant caused a "discriminatory and abusive work environment" and wrongfully terminated Plaintiff due to her age and gender. (*Id.* ¶¶ 12-14.)

The Court finds that Plaintiff has merely recited the elements of her claim and has provided no factual support that would allow the Court to infer that such a claim is plausible. A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; see also *Erickson,* 551 U.S. at 94. Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Id.*

In the instant case, a review of the entire Complaint reveals that Plaintiff makes

nothing but vague, conclusory statements. The Court is told that Defendant's employees or agents made comments and acted abusively towards Plaintiff, which constituted severe harassment–but the Court is not given any concrete, factual examples of such conduct that would allow the Court to infer that it might indeed be harassment, the severity of which might support a claim for intentional infliction of emotional distress. Furthermore, in the paragraphs supporting this count, Plaintiff does not provide any facts, but merely states the elements of an intentional infliction of emotional distress claim. *See Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418, 428 (Tenn. Ct. App. 2006) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (stating that the conduct must be (1) intentional or reckless; (2) be so outrageous that it is not tolerated by civilized society, and (3) result in severe mental injury)).

Recitation of the elements of a claim without factual support allows the Court to infer the possibility of misconduct by the Defendant, but it is not sufficient to allow the Court to infer that the Plaintiff's claim and chance for relief are plausible. The Court acknowledges that Plaintiff asserts that she will substantiate her claim more fully through discovery, but the Court does not understand why Plaintiff, as the individual on the receiving end of the allegedly injurious remarks and conduct, could not provide basic factual support for these allegations in her Complaint prior to engaging in discovery. Nonetheless, Plaintiff failed to do so, and her claim of intentional infliction of emotional distress fails to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, Defendant's Motion to Dismiss Plaintiff's intentional infliction of emotional distress claim is **GRANTED** and Plaintiff's claim is **DISMISSED WITH PREJUDICE**.

### D. Count VI - Age Discrimination

Defendant asserts that Plaintiff has failed to state a claim for age discrimination pursuant to the THRA. (Def.'s Mem. at 8.) Defendant contends that its records indicate that Plaintiff was only 37 years old on the date of her termination, and Plaintiff must have been over the age of 40 to qualify for the protected class. (*Id.*) Plaintiff concedes that she was not over 40 years old at the time of the alleged acts and that this count may be dismissed. (Pl.'s Resp. at 9.) Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss Count VI of Plaintiff's Complaint, and this claim shall be **DISMISSED WITH PREJUDICE**.

### E. Count VIII - Wrongful Termination

Defendant asserts that Plaintiff's claim of common law wrongful termination should be dismissed because the THRA provides sufficient remedies for her gender discrimination claim. (Def.'s Mem. at 8-10.) In support of this contention, Defendant references cases from other states where courts have held that the anti-discrimination statute eclipses similar common law, public policy-based discrimination claims. (*Id.* at 9-10.) Defendant contends that because the THRA is a comprehensive anti-discrimination statute with many different remedies, this Court should similarly declare that the THRA remedies work to the exclusion of common law counterparts. (*Id.* at 10.)

Plaintiff claims that her wrongful termination claim is separate from her THRA gender discrimination claims and that Tennessee has never dictated that a plaintiff cannot plead both THRA and common law claims. (Pl.'s Resp. at 9.)

Generally, "[a] plaintiff may bring a cause of action for wrongful discharge under any

statute that provides such a claim or under the common law of the state." *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 613 (Tenn. Ct. App. 2007). Plaintiff has already asserted a statutory claim under the THRA, and this is Plaintiff's attempt to assert a separate claim under the common law. The Court acknowledges that Tennessee recognizes a common law tort of retaliatory discharge, which is synonymous with wrongful discharge and wrongful termination. *See Clanton v. Cain Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984). To establish a claim of retaliatory discharge, the plaintiff must prove:

> (1) that an employment-at-will relationship existed; (2) [the employee] was discharged; (3) the reason for [the] discharge was that [the employee] attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in [the employer's] decision to discharge [the employee] was [the employee's] exercise of protected rights or compliance with clear public policy.

*Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp.2d 848, 862 (E.D. Tenn. 2006) (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002)). The Court initially notes that Plaintiff's Complaint is devoid of specific facts that would establish any action by Plaintiff to assert her rights prior to her termination, which was allegedly due to gender. Nonetheless, the Court will review this claim in the light most favorable to Plaintiff and accept that the THRA may provide a public policy basis for this common law claim, even in the absence of employee action..

Although Tennessee state courts have not addressed the intersection of the THRA and a common law claim for wrongful termination in this context, a federal court applying Tennessee law has thoroughly analyzed and resolved this issue. In *England v. Fleetguard, Inc.*, 878 F. Supp. 1058 (M.D. Tenn. 1995), the court considered whether the plaintiff could

amend his complaint, asserting Title VII and THRA claims, to add a common law claim for retaliatory discharge. *Id.* at 1058-59. The *England* court noted that the Tennessee Supreme Court recognized this common law tort in 1984, with the case of *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984). *Id.* at 1063-64. The *England* court further acknowledged that the THRA appeared to fit into the current scheme of common law retaliatory discharge claims, stating that "[o]bviously, the THRA embodies a 'clearly expressed statutory policy' against firing an employee on the basis of these criteria. . . . [I]t is clear that a claim for retaliatory discharge will lie 'where the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision.'" *Id.* at 1064 (citation omitted).

The *England* court's analysis did not halt there; instead, the court went on to determine if the statutory remedies available through the THRA were exclusive. The court sought guidance from another Tennessee Supreme Court case, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). In *Hodges*, the Tennessee Supreme Court directly addressed the cumulative versus exclusive nature of statutory remedies, and the court stated as follows:

> The issue presented is whether the statutory remedy . . . is the sole and exclusive relief. . . . Resolution of this matter necessitates an examination of the state of the law on retaliatory discharge at the time the statute was enacted. This is so because if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. However, where a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise.

*Id.* at 898-99. Relying on this language in *Hodges*, the *England* court determined that the THRA was enacted in 1978, while the common law tort of retaliatory discharge was not

created until 1984. *England*, 878 F. Supp. at 1064-65. Because the THRA preceded the common law remedy, therefore, the court declared that the statutory remedies found in the THRA were exclusive rather than cumulative. *Id.* at 1065. The *England* court rejected the plaintiff's argument that the 1989 THRA amendment should be the controlling date because the THRA provided for remedies from its creation and did not later add such remedies through amendment. *Id.*

This Court finds that the *England* court properly applied Tennessee law to this issue, and the Court credits the *England* court's analysis and conclusion. Therefore, the Court finds that Plaintiff's common law claim of "wrongful termination" based on gender discrimination is precluded by the exclusive remedies available through the THRA for discharge on the basis of gender discrimination. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Count VIII of Plaintiff's Complaint, and Plaintiff's wrongful termination claim is **DISMISSED WITH PREJUDICE**.

  F.  **Count IX - Punitive Damages**

Defendant states that Plaintiff cannot have a separate count for punitive damages, as it is not a separate cause of action for which relief may be granted. (Def.'s Mem. at 11.) Plaintiff concedes that punitive damages as a count may be dismissed, but maintains the claim for punitive damages as part of her damages. (Pl.'s Resp. at 10.) The Court **GRANTS** Defendant's Motion to Dismiss Count IX of Plaintiff's Complaint, and this count is **DISMISSED WITH PREJUDICE**. The Court will, however, permit Plaintiff to proceed with a damages request which includes punitive damages.

**IV. CONCLUSION**

For the reasons outlined above, Defendant's Motion to Dismiss [Court Doc. 5] is **GRANTED**. Counts I, II, III, IV, VI, VIII, and IX of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**. Plaintiff's Motion to Stay Discovery [Court Doc. 31] is hereby **DENIED AS MOOT**.

    **SO ORDERED** this 10th day of August, 2010.

               *s/ Harry S. Mattice, Jr.*
              HARRY S. MATTICE, JR.
            UNITED STATES DISTRICT JUDGE